# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2071

_____

Thomas J. Anderson, and      *
Karen L. Anderson,      *
     *
     Plaintiffs - Appellants,      *
     *    Appeal from the United States
     v.      *    District Court for the
     *    Southern District of Iowa.
Jeffrey L. Larson, Individually and as      *
County Attorney for Shelby County,      *
Iowa; Durwood Eugene Cavenaugh,      *
Individually and as Sheriff of Shelby      *
County, Iowa; Mark Hervey,      *
Individually and as Deputy Sheriff of      *
Shelby County, Iowa; and Todd G.      *
Jones, Individually and as Special      *
Agent of the Iowa Division of Narcotics *
Enforcement, Shelby County, Iowa,      *
     *
     Defendants - Appellees.      *

_____

Submitted: December 9, 2002

Filed: April 30, 2003
_____

Before McMILLIAN, FAGG and BYE, Circuit Judges.
_____

BYE, Circuit Judge.

Thomas J. Anderson, an attorney, and his wife Karen L. Anderson brought this action pursuant to 42 U.S.C. § 1983 against three officers and a prosecutor for their actions during an investigation and prosecution that resulted in Anderson's conviction for solicitation of a felony. Thomas Anderson alleges violations of his Fourth, Fifth and Fourteenth Amendment rights under the U.S. Constitution and pendant state law claims. Karen Anderson claims loss of consortium. The district court[1] determined the Defendants were immune from the federal and state law claims and granted summary judgment. On appeal the Andersons argue the district court erred in its treatment of the evidence and in holding the Defendants immune. We affirm.

I

Viewed in the light most favorable to the Andersons, the record reveals the following facts. Todd G. Jones, a Special Agent with the Iowa Division of Narcotics Enforcement, was investigating Steven Schuemann for drug offenses in late 1997. Jones posed as a drug dealer and befriended Schuemann. While Jones was undercover Schuemann suggested Jones hire Thomas Anderson, who represented Schuemann, because Anderson accepted drugs as payment for legal services. Schuemann told Jones Anderson had accepted drugs from Schuemann as payment for legal services a few weeks earlier. Jones and Mark Hervey, a Shelby County Deputy Sheriff, later arrested Schuemann for a host of drug offenses.

On February 24, 1998, Schuemann agreed to cooperate with the investigation in exchange for reduced charges. Jeffrey L. Larson, Shelby County Attorney, prepared the cooperation agreement and signed it on behalf of Shelby County. When questioned, Schuemann reaffirmed what he told Jones earlier; his attorney, Anderson, had in the past accepted drugs as payment for legal services and would likely do so

---

[1]The Honorable Ronald E. Longstaff, United States District Court for the Southern District of Iowa.

-2-

again. In accordance with the cooperation agreement, Schuemann introduced Jones, again undercover, to Anderson by telephone. Schuemann told Anderson that Jones had been charged with a crime in another county and needed Anderson's legal services. Schuemann implied Jones was affiliated with another man who had committed a notorious murder in a nearby county a month earlier.

On March 18, 1998, Jones called Anderson on the pretext of discussing the fake charge against him. During that recorded telephone call Jones told Anderson he owed Schuemann a big favor and, to settle it, wanted to pay for Schuemann's legal bills. Jones then told Anderson he would come to Anderson's office and bring "half a Z" (slang for one half-ounce of cocaine) with him. Jones asked whether Anderson knew what that meant and Anderson responded that he knew.

Jones then went to Anderson's office and recorded the conversation. Jones wore leather and long hair and appeared to be a member of a motorcycle gang. Anderson claims Jones had a bulge in his pants and he believed it to be a gun, but Jones was not in fact armed. When Jones asked about Schuemann's legal bills, Anderson explained the legal services for which Schuemann owed him money. When Anderson told Jones the exact amount Schuemann owed, Jones stood up, pulled a bag of cocaine from his pocket, and placed it on Anderson's desk. Anderson picked it up, examined it, untied it, smelled it, and in response to Jones's inquiry, said it was worth six or seven hundred dollars off Schuemann's total bill of $1360. Jones and Anderson then discussed future delivery of drugs to settle the rest of the bill. Anderson kept the cocaine when Jones left his office.

During this encounter Hervey and Cavenaugh were waiting outside Anderson's office but could not hear the exchange between Jones and Anderson. When Jones left Anderson's office he told Hervey and Cavenaugh Anderson had accepted the drugs. Hervey and Cavenaugh entered Anderson's office and arrested him approximately two minutes after Jones left the office. The cocaine was in Anderson's coat pocket.

Anderson was charged with the lone offense of solicitation of a felony pursuant to Iowa Code § 705.1. The Iowa trial court denied his motions to dismiss the charges and to suppress the drug evidence. Anderson claimed innocence but was convicted on December 8, 1998, in a jury trial. The Iowa Supreme Court reversed the conviction on the ground there was insufficient evidence of solicitation because Anderson had merely responded to Jones's invitation to accept drugs. Iowa v. Anderson, 618 N.W.2d 369, 373-74 (Iowa 2000). In a footnote, the Iowa Supreme Court said, "[w]e do not mean to imply that the defendant committed no crime, only that, whatever offense he committed, it was not solicitation of a felony." Id. at 373, n.2.

Anderson and his wife brought this action against the county prosecutor and three officers involved in the investigation, arrest and prosecution. They allege in Count 1, brought pursuant to 42 U.S.C. § 1983, violations of Anderson's Fourth, Fifth and Fourteenth Amendment rights under the U.S. Constitution; in Count 2 pendant state law claims of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, invasion of privacy, negligence, gross negligence, negligent hiring and retention and supervision; and in Count 3 a pendant state law claim of intentional interference with Anderson's contractual relationship with Schuemann.

The district court granted the Defendants' motion for summary judgment on all claims. With regard to the federal causes of action, the district court determined Larson, the prosecutor, was shielded by absolute immunity for his actions. The court further found Anderson could not establish Cavenaugh, Hervey or Jones violated his constitutional rights and they were entitled to qualified immunity. The court held all the Defendants were immune from the state law claims pursuant to Iowa Code § 669, the Iowa Tort Claims Act. The Andersons appeal the district court decision with respect to the Fourth and Fourteenth Amendment and state claims only.

## II

"We review a district court's grant of summary judgment de novo. Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Duffy v. McPhillips, 276 F.3d 988, 991 (8th Cir. 2002) (citations omitted); Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the absence of a genuine issue of material fact. Lynn v. Deaconess Med. Ctr.-West Campus, 160 F.3d 484, 487 (8th Cir. 1998). "We may uphold a grant of summary judgment for any reason supported by the record, even if different from the reasons given by the district court." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).

The Andersons complain the district court did not view all the evidence in their favor. They point to two instances of improper weighing of evidence: the district court's discussion of the Iowa Supreme Court decision and its treatment of Anderson's asserted fear of Jones.

The Andersons argued below and on appeal the Iowa Supreme Court's holding supports their assertion Defendants had no probable cause to believe Anderson committed any crime when they investigated, arrested and prosecuted him. The district court noted the Iowa Supreme Court's holding concerned the definition of solicitation, and quoted its footnote explaining the holding did not mean Anderson was innocent of all crimes. The district court's treatment of the Iowa Supreme Court's opinion was relevant to rebut the Andersons' over broad reading of it. Proper interpretation of the Iowa Supreme Court's decision was a question of law, not the improper weighing of factual evidence. Moreover, it was the only correct interpretation of the Iowa court's decision. It was not improper under the summary judgment standard.

In its memorandum and order granting summary judgment, the district court noted: "Anderson now states that he was so intimidated by Jones that he thought his life was in imminent danger unless he accepted the drugs." Anderson interprets the that sentence as suggesting he did not assert he was afraid of Jones before the suit was filed. The Andersons protest the district court's "finding of fact" as improper because Anderson had always claimed to be fearful of Jones. The Andersons, however, read far too much into the district court's use of the word "now." It is clear from the sentence and from the context that whether Anderson's explanation for taking the drugs was new or old is irrelevant to the court's analysis. It certainly was not improper weighing of disputed evidence.

III

The Andersons contend the district court's grant of absolute immunity to Larson was error, and we agree in part. Prosecutors are protected by absolute immunity from civil liability under § 1983 for prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process. Buckley v. Fitzsimmons, 509 U.S. 259, 268-71 (1993); Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996). In contrast, a prosecutor is entitled only to qualified immunity when performing actions in an "investigatory" or "administrative" capacity. Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). To decide whether an action is prosecutorial, investigatory or administrative, the court must look to "the nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229 (1987); Brodnicki, 75 F.3d at 1266-67. The U.S. Supreme Court has emphasized "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns v. Reed, 500 U.S. 478, 486 (1991).

The Andersons argue Larson's communications with Schuemann violated the rules governing attorney conduct in the state of Iowa, and such a violation should rob Larson of absolute immunity. The Iowa Disciplinary Rules state, in pertinent part:

> During the course of representing a client a lawyer shall not . . . [c]ommunicate or cause another to communicate on the subject of the representation with a party known to be represented by a lawyer in that matter except with the prior consent of the lawyer representing such other party or as authorized by law.

Iowa D.R. 7-104(a)(1). The subject of Schuemann's cooperation was Anderson's acceptance of drugs as a method of payment for his legal services, not Anderson's representation of Schuemann. We are not convinced Larson violated the rule, and Anderson points to no Iowa decision on point. Moreover, the Supreme Court has found breaches of attorney ethic rules to be protected by absolute immunity when they occur while the prosecutor is performing in a prosecutorial role. Burns v. Reed, 500 U.S. at 489-90 (finding prosecutors are absolutely immune where the prosecutor was alleged to have knowingly elicited false and defamatory testimony from witnesses). Redress for a lawyer's ethical lapse is best had in a disciplinary proceeding before the state bar.

The question of whether absolute or qualified immunity applies depends upon whether the prosecutor's acts were prosecutorial, investigatory or administrative in nature. Buckley, 509 U.S. at 268-71; Imbler, 424 U.S. at 430-31. We first note Larson's involvement with Schuemann's cooperation agreement fell well within the normal acts of a prosecutor and qualify for absolute immunity. Brodnicki, 75 F.3d at 1268. The same is true for Larson's decision to drop charges against Schuemann and to initiate an investigation of Anderson. Id. ("The decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and absolute immunity thus attaches to those decisions.").

The Andersons offer no evidence supporting their claim Larson told or directed Jones to engage Anderson in solicitation of a felony. They do, however, have evidence showing Larson gave Jones legal advice during the investigation. Specifically, Larson may have advised Jones to engage Anderson in the crime of solicitation of a felony. The Supreme Court has held giving legal advice to police during an investigation strips a prosecutor of absolute immunity for that act because it is not a normal part of prosecutions. Burns v. Reed, 500 U.S. at 494. Because a reasonable jury could find Larson gave Jones legal advice during the investigation, we conclude Larson is not absolutely immune for that act. With respect to all other acts, Larson has absolute prosecutorial immunity. While we hold the district court erred in finding Larson absolutely immune for the act of providing legal advice during the investigation, the doctrine of qualified immunity remains available to him for that act, as it does for Cavenaugh, Jones and Hervey. Imbler, 424 U.S. at 430-31.

IV

Qualified immunity shields government officials from federal suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to "allow public officers to carry out their duties as they believe are correct and consistent with good public policy . . . ." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002). The inquiry "focuses on the objective legal reasonableness of the official's acts," and the qualified immunity defense fails if the official violates a clearly established right because "a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818-19. The analysis is two-part: first, has plaintiff alleged a violation of a constitutional right; second, was that right "clearly established at the time of the alleged violation." Manzano v. S.D. Dep't of Soc. Servs., 60 F.3d 505, 509 (8th Cir. 1995). The district court found the Andersons could not establish a violation of a constitutional right by any Defendant, and we agree.

Anderson claims his arrest and prosecution violated his right to substantive due process pursuant to the Fourteenth Amendment. Such is a claim if a defendant's conduct "shocks the conscience or interferes with rights implicit in the concept of ordered liberty," or "offends judicial notions of fairness," or is "offensive to human dignity," or is taken with "deliberate indifference" to protected rights. Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing United States v. Solerno, 481 U.S. 739 (1987)); Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir. 1989); Neil v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958-59 (8th Cir. 2000).

It is uncontested Schuemann told the Defendants he had paid Anderson for legal services with drugs, and it was Anderson's practice to accept drugs. Larson, Cavenaugh, Hervey and Jones therefore had probable cause to believe Anderson had committed a drug crime and would again. Their initiation of an investigation was therefore not a violation of substantive due process. Later when Anderson accepted drugs from Jones as payment for legal services, Defendants had probable cause to believe he had committed another drug crime. The arrest was, therefore, well grounded and not the least bit shocking or offensive to judicial notions of fairness. The prosecution was not violative of Anderson's substantive due process rights, even if the prosecutor chose the wrong charge to pursue. Nor was the Defendants' use of Schuemann in their investigation of Anderson. The purpose of the attorney-client relationship is not to protect an attorney committing crimes. While the use of an attorney's client to investigate the attorney may tip-toe on hazardous ground, Anderson shows no substantive due process violation in this case.

The Andersons also argue Jones's actions violated the Iowa statute governing undercover police work, and said violation rose to the level of a Fourteenth Amendment substantive due process violation. The Iowa statute provides that officers who commit crimes during an investigation "shall not be guilty of that crime or of the crime of solicitation" provided the officers do not instigate the crime, do not injure another, have the consent of superiors, and are reasonable. Iowa Code

-9-

§ 704.11.  Jones's actions in initiating the crime at most nullify the statute's exculpatory effect, making Jones subject to criminal prosecution for the drug transaction.  The statute does not confer rights upon suspects, nor does it provide for a remedy if police do not follow it.  The record shows Jones's acts were not "offensive to human dignity," nor do they "offend judicial notions of fairness."  Moreover, a violation of state law does not deprive an official of qualified immunity, unless the violation itself gives rise to a § 1983 cause of action.  Parrish v. Mallinger, 133 F.3d 612, 614 (8th Cir. 1998).  We find no substantive due process violation in the investigation, arrest or prosecution of Anderson.

Anderson also claims his arrest violated the Fourth Amendment.  A claim of false arrest brought pursuant to § 1983 fails if the officer had probable cause to make the arrest.  Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001).  Anderson claims Defendants had no probable cause because they knew he only accepted the drugs out of fear of Jones's undercover persona.

Jones was wearing leather and long hair and had a bulge in his clothing Anderson incorrectly believed to be a gun.  Anderson claims he was lead to believe Jones was responsible for a recent murder in which the victim's ears were removed with a chainsaw.  Anderson's fear, however, does not show Defendants did not have probable cause to believe Anderson committed a crime when he accepted the drugs.  Jones had no way of knowing Anderson believed he was an armed, corpse-mutilating murderer.  In their telephone conversation Jones told Anderson he was coming over with drugs and intended to pay for Schuemann's legal bill and Anderson did not discourage him.  It was Anderson, not Jones, who suggested the value of the drugs on Schuemann's bill.  Anderson voiced no hesitation or concern when Jones gave him the drugs and left.  From Jones's perspective, when Anderson accepted the drugs without protest and in apparent agreement with the exchange, there was ample probable cause for arrest.  We therefore hold Anderson can not show his arrest violated the Fourth Amendment.

V

The district court ruled Defendants were immune from the Andersons' state law claims under the Iowa Tort Claims Act, Iowa Code § 669.  The Andersons point to no error in that analysis or decision.  Fed. R. App. P. 28(a) provides that an appellant's brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor."  Our general rule is "a party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." United States v. Eldeeb, 20 F.3d 841, 843 (8th Cir. 1994) (quoting Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985)).  The Andersons have abandoned their state law claims and, without review on the merits, we affirm summary judgment on the state law claims.  We therefore affirm the judgment of the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.